No. 24-1028

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

ROLANDO MUNIZ

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, et al.,

Defendants-Appellees.

On Appeal from the U.S. District Court
for the District of New Jersey
No. 1:22-CV-816, Hon. Noel Hillman

APPELLANT'S OPENING BRIEF

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
  #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

JURISDICTIONAL STATEMENT ................................................................................1

STATEMENT OF THE ISSUES.....................................................................................1

STATEMENT OF RELATED CASES ...........................................................................2

STATEMENT OF THE CASE ........................................................................................2

SUMMARY OF ARGUMENT........................................................................................5

STANDARD OF REVIEW .............................................................................................6

ARGUMENT....................................................................................................................6

    I.   Muniz's Eighth Amendment Claim Is Not an Extension of *Bivens* ......................6

    II.  Muniz Stated a Claim Under the Rehabilitation Act...............................................11

CONCLUSION................................................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## CASES

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

503 U.S. 140, 151 (1992) .......................................................................................9

*Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014) .............6

*Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) .....................................12

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) .................................13

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018)......................................................................7, 9

*Brown v. Meisner*, 81 F.4th 706 (7th Cir. 2023) ....................................................................15

*Bryant v. Madigan*. 84 F.3d 246 (7th Cir. 1996) ..................................................................16

*Carlson v. Green*, 446 U.S. 14 (1980) ...........................................................................*passim*

*City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159 (3d Cir. 2014)....................................6

*Dinkins v. Corr. Med. Servs.*, 734 F.3d 633, 634–35 (8th Cir. 2014) ....................................14

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) ..............................................................6

*Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023) ....................................................................16

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) .......................................................................7, 10

*Farmer v. Brennan*, 511 U.S. 825 (1994) ..............................................................................9

*Furgess v. Pennsylvania Department of Corrections*, 933 F.3d 285 (3d Cir. 2019) ........... 16, 17

*Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015)................................14

*Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368 (3d Cir. 2019) .......................................10

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ............................................................................9

*Morris v. California*, No. 21-16059, 2022 WL 2901730 (9th Cir. 2022) ...........................15

*Munoz v. California Department of Corrections and Rehabilitation*, 42 F. App'x 59 (9th Cir. 2021) .............................................................................................................................15

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ................................................................12

*Pierce v. Cnty. of Orange*, 526 F.3d 1190 (9th Cir. 2008) .....................................................14

*Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021) ............................................6

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) ...............................13

*Stanard v. Dy*, 88 F.4th 811 (9th Cir. 2023) ....................................11

*Tennessee v. Lane*, 541 U.S. 509 (2004) .........................................13

*United States v. Georgia*, 546 U.S. 151 (2006) .................................16

*Vaughn v. Bassett.* No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024) ...............11

*Wright v. New York State Department of Corrections*, 831 F.3d 64 (2d Cir. 2016) ...............13

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ...................................5, 7, 9, 10

## STATUTES

29 U.S.C. § 794(b) ...............................................................12

## OTHER AUTHORITIES

28 C.F.R. § 35.152(b)(3) ........................................................14

28 C.F.R. Pt. 35, App. A ........................................................14

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Rolando Muniz appeals from an order of dismissal with prejudice entered December 7, 2023, by the U.S. District Court for the District of New Jersey. App. 3. The district court had subject-matter jurisdiction over his claims under 28 U.S.C. § 1331. In accordance with Federal Rule of Appellate Procedure 4(a), a timely notice of appeal was filed on December 29, 2023. App. 1. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that Muniz's Eighth Amendment claim for deliberate indifference to a serious medical need would require extending *Bivens* to a new context despite the Supreme Court's recognition of an analogous Eighth Amendment claim in *Carlson v. Green*, 446 U.S. 14 (1980).

2. Whether the district court erred in *sua sponte* dismissing without leave to amend Muniz's claim under the Rehabilitation Act pursuant to pre-service frivolity screening when he alleged that prison officials took away disability accommodations including a lower-bunk and soft shoes with no basis.

## STATEMENT OF RELATED CASES

To counsel's knowledge, this case has not been before this Court previously. Counsel is not aware of any cases or proceedings that are in any way related, completed, pending, or about to be presented before this court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

### Factual Background

Rolando Muniz has been in federal custody since 2011. App. 41. Upon first being incarcerated, prison health care providers immediately diagnosed him with diabetes. *Id.* Medical staff increased or decreased his dose of Metformin as needed to keep his diabetes in check. App. 41–42. He also developed diabetic ulcers on his feet—as a result, prison staff provided him with disability accommodations including a soft-shoe pass and a lower-bunk pass. App. 42. Muniz saw an outside specialist around 2017–18 that confirmed this treatment as appropriate. *Id.*

In the fall of 2018, Muniz was sent to the Special Housing Unit, a term meaning solitary confinement, and he spent ten months there. *Id.* He "practically starved." *Id.* As a result, his A1C, a blood sugar measurement test, fell temporarily from highly diabetic to merely prediabetic. *Id.* Medical staff appropriately changed his dosage of Metformin as needed as a result of this change to manage his diabetes. *Id.*

In July 2019, Muniz was transferred to FCI Fairton in New Jersey. App. 43. Despite Muniz's past diagnoses and without taking a blood test, relying solely on a past A1C reading from when he was in solitary confinement and practically starving, Dr. Abigail Lopez removed Muniz from his diabetes medication. *Id.* Dr. Lopez ignored Muniz's pleas that this test reading was an outlier. *Id.* She also took away Muniz's soft-shoe pass and lower-bunk pass without even examining his feet. *Id.*

Within months, Muniz's diabetes had "skyrocketed" and his feet had filled with painful blisters full of pus. App. 44. Muniz gave staff verbal and written complaints seeking treatment and accommodation. *Id.* On November 7, 2019, his blisters had progressed to the point that medical staff prescribed him ten days of "wound care." *Id.* Medical staff, however, refused to provide the wound care six of the ten days when he reported for treatment. *Id.* His blisters began suppurating puss 24 hours per day and Muniz was in extreme pain. *Id.* On November 16, 2019, Muniz asked a security officer to intervene, showing him his wounds, and asking medical to help him—medical refused the officer's request. *Id.* The same thing played out again the following day. *Id.*

On November 18, 2019, Muniz showed a different medical staff member his wound and the staff member immediately took him to medical where medical staff insisted he be immediately taken to the emergency room. App. 45. Staff took him to Inspira County Hospital where physicians promptly put him on antibiotics. *Id.* The following day, the hospital performed an MRI which showed that the infection in his feet had spread to the bone of one of his toes which would have to be amputated. *Id.*

On November 22, 2019, Muniz's toe was amputated and he was returned to prison the following day. *Id.* A blood test later revealed that he was, again, fully diabetic. *Id.* Ten days after the amputation of his toe because of the diabetic ulcer, Dr. Lopez finally returned Muniz to Metformin, which he still takes. *Id.*

**Procedural History**

After exhausting the administrative grievance process, App. 41, Muniz, proceeding pro se, sued Dr. Lopez and Jane Doe Defendants, App. 30–50. As relevant here, Muniz sought monetary damages against Lopez and the Jane Doe Defendants under the Eighth Amendment pursuant to *Bivens*, 403 U.S. 388. *Id.* He also brought a claim under the Rehabilitation Act for failure to accommodate his disabilities. *Id.* Although not necessary at the stages relevant to this appeal, Muniz also attached a number of prison records documenting his claims. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *see also* App. 69, 71, 81, 90, 126 (documenting Muniz's disability accommodations); App. 52, 57, 59, 114, 119, 128 (documenting his diabetes and resulting foot issues and amputation).

On pre-service screening, the district court dismissed Muniz's Rehabilitation Act claim, holding that Muniz did not allege that he was excluded from any program on the basis of his disability. App. 141. This dismissal was with prejudice and without leave to amend. App. 146. Defendant Lopez moved to dismiss Muniz's *Bivens* claim and the district court did so on the ground that Muniz's amputation is meaningfully different

from the medical emergency faced by the prisoner in *Carlson v. Green*, 446 U.S. 14 (1980). App. 17. Muniz timely appealed. App. 1.

## SUMMARY OF ARGUMENT

This Court should reverse and remand for Muniz to pursue a *Bivens* action based on deliberate indifference to his serious medical need and a Rehabilitation Act claim based on the prison's failure to accommodate his disability.

**1.** Muniz's Eighth Amendment claim does not require an extension of *Bivens* to a new context. A case arises in a "new *Bivens* context" where it "is different in a meaningful way from previous *Bivens* cases." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). Factors courts should consider in evaluating whether a case presents such a "new *Bivens* context" include the constitutional right at issue and the extent of judicial guidance available governing the scope of that right, the rank of the officers involved, and the risk of judicial intrusion into the functioning of other branches. *Id.* at 140. By every factor, Muniz's case is on all fours with *Carlson*. That Muniz merely suffered excruciating pain and amputation rather than death is a difference that does not implicate the *Abbasi* factors or the separation of powers concerns that animated its result.

**2.** Muniz stated a claim under the Rehabilitation Act. His diabetes qualified as a disability and he identified multiple services that he lacked meaningful access to as a result of Defendants' failures to reasonably accommodate him. The district court's *sua sponte* dismissal of Muniz's claim on pre-service screening overlooked Muniz's key allegations identifying the failure to accommodate his disability. The court's reliance on

this Court's precedent carving out medical malpractice-type claims from disability law was therefore inapt.

## STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss de novo. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014). When reviewing a district court's grant of a motion to dismiss, this Court "must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (internal quotation marks omitted) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)). Because Muniz drafted his complaint pro se, it must be construed "liberally" and held to "less stringent standards than formal pleadings drafted by lawyers." *Shorter v. United States*, 12 F.4th 366, 371 (3d Cir. 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## ARGUMENT

The district court erred in dismissing Muniz's Eighth Amendment claim. His Eighth Amendment claim does not constitute an extension of *Bivens*.

## I.     Muniz's Eighth Amendment Claim Is Not an Extension of *Bivens.*

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers who violate an individual's constitutional rights. *Bivens* established that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." *Carlson*, 446 U.S. at 18. A *Bivens*

claim "is brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 582 U.S. at 140.

In the Supreme Court's recent explication of *Bivens* in *Ziglar v. Abbasi*, the Court clarified how to determine the availability of a *Bivens* remedy for a given constitutional claim. At the outset, the court should evaluate whether the case arises in a "new *Bivens* context," such that it "is different in a meaningful way from previous *Bivens* cases." *Id.* at 139. If the claim does arise in a "new context," the court should inquire into whether there are any "special factors counselling hesitation" before extending a damages remedy into the new context. *Id.* at 136.

A case may arise in a "new context:"

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140; *see also id.* at 147-48; *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) ("[A] new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'"); *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018). Because Muniz's Eighth Amendment claim does not arise in a "new context" and is therefore not an extension of *Bivens*, no recourse to the *Bivens* "special factors" is necessary to conclude that a damages remedy is available.

After *Bivens* authorized a damages action against federal narcotics agents who violated the Fourth Amendment by executing a search and an arrest without a warrant and using excessive force in making the arrest, the Supreme Court subsequently permitted a damages remedy against rank-and-file federal prison officials for violating the Eighth Amendment in *Carlson v. Green*. *See* 446 U.S. at 18–23. In *Carlson*, the mother of a deceased asthma patient who had been incarcerated in federal prison sued prison officials for deliberate indifference to his serious medical needs after they failed to give him competent medical attention, administered contraindicated drugs and a non-working respirator that worsened his condition, and delayed his transfer to an outside hospital. *Id.* at 16 n.1. The Court concluded that a damages remedy was appropriate for the alleged Eighth Amendment violation because rank-and-file prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Id.* at 19. Though "requiring [prison officials] to defend [a damages] suit might inhibit their efforts to perform their official duties" to some extent, the Court explained that qualified immunity would "provide[] adequate protection." *Id.* Meanwhile, a damages remedy against individual prison officials for Eighth Amendment violations would "serve[] a deterrent purpose" by imposing "personal financial liability." *Id.* at 21.

A decade later, in *McCarthy v. Madigan*, the Court reaffirmed *Carlson*'s holding, reiterating that "prison officials" are subject to *Bivens* liability because they "do not enjoy an independent status in our constitutional scheme, nor are they likely to be unduly

inhibited in the performance of their duties by the assertion of a *Bivens* claim." 503 U.S. 140, 151 (1992), *superseded by statute on other grounds as recognized by Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Two years after that, in *Farmer v. Brennan*, the Court applied *Carlson* to another Eighth Amendment claim, this time based on prison officials' failure to protect the plaintiff from a substantial risk of violence from another prisoner. 511 U.S. 825, 830 (1994). The Supreme Court acknowledged the viability of the plaintiff's claim under *Bivens* without analysis and proceeded to clarify the standard for Eighth Amendment deliberate indifference claims in a *Bivens* suit. *Id.* at 832–40; *see also Bistrian*, 912 F.3d at 90–91. Together these cases indicate the continuing viability of *Bivens* suits against line-level prison officials at the very least for medical deliberate indifference and failure-to-protect claims.

*Carlson* and *Farmer* resolve this appeal, as they show that not a single one of the *Abbasi* factors for identifying a "new *Bivens* context" is met, *Abbasi*, 582 U.S. at 139–40, as either a legal or factual matter. The Eighth Amendment's prohibition on cruel and unusual punishments generally and, more specifically, its prohibition on deliberate indifference to serious medical needs is the source of both the deliberate indifference claim at issue in *Carlson* and Muniz's claim. Judicial precedent provides no "less meaningful" of a "guide for official conduct" as in *Carlson. See Abbasi*, 582 U.S. at 148 ("The Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" (quoting *Estelle*, 427 U.S. at 104)).

The facts of *Carlson* and this case also show that there is no "meaningful" distinction between them, as the Supreme Court defined that term in *Egbert*, 142 S. Ct. at 1803, and *Abbasi*, 582 U.S. at 139–40. The rank of the officers involved is no higher here than it was in *Carlson*. In fact, Muniz seeks to hold accountable for his harm only the rank-and-file prison officials who were personally responsible for his injury. The plaintiff in *Carlson*, by contrast, sought damages from a range of officials at different levels of the prison bureaucracy, all the way up to the federal director of the Bureau of Prisons, *Carlson*, 446 U.S. at 14; the plaintiff in *Farmer* similarly sued both rank-and-file prison officials and the prison warden, *Farmer*, 511 U.S. at 825. The official action at issue in all three cases is equally "specific": Each suit involved a claim of direct harm by a prison official to an individual in his care rather than a challenge to a general policy that created certain conditions of confinement. In sum, there are no factors implicated here "that previous *Bivens* cases did not consider." *Egbert*, 142 S. Ct. at 1803.

Moreover, there is no greater risk in this case of intrusion by the judiciary into the functioning of other branches. As the Supreme Court explained in *Carlson*, prison officials lack the kind of "independent status in our constitutional scheme" that would render inappropriate "judicially created remedies against them." 446 U.S. at 19. This case, like *Carlson*, does not require the Court to "balanc[e] the rights of incarcerated citizens with the administrative judgment of prison officials," *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 370 (3d Cir. 2019), because no "administrative judgment" by security staff is at issue here.

The district court conceded that Muniz's "allegations are very similar to *Carlson*" but held that Muniz's infection, extreme pain, and amputation were "meaningfully different" from death. Op. 12, 14. Dying is certainly meaningfully different than any other physical injury but the question is whether the difference is "meaningful" pursuant to the separation of powers concerns laid out in *Abbasi*, not whether the court can conceive of any factual distinction.

The Ninth Circuit in *Stanard v. Dy* rejected this identical reasoning. 88 F.4th 811, 817 (9th Cir. 2023). The plaintiff in *Stanard* sued for deliberate indifference to his hepatitis C, which injured but did not kill him. *Id.* The court held that the "difference in degree" of employee misconduct "is not a meaningful difference giving rise to a new context" because it does not implicate any of the concerns the Supreme Court has articulated in limiting the expansion of *Bivens* claims. *Id.*

The Fifth Circuit made the same holding in *Vaughn v. Bassett*. No. 22-10962, 2024 WL 2891897, at *3 (5th Cir. June 10, 2024). The plaintiff in *Vaughn* did not have asthma and did not die—instead of stopping there the court asked whether those differences are "meaningful." *Id.* Turning to post-*Abbasi* but pre-*Egbert* authority, the court held that it was bound to conclude that it was not. *Id.* This Court should rule the same here.

## II.  Muniz Stated a Claim Under the Rehabilitation Act.

Under a frivolity screening pursuant to the Prison Litigation Reform Act, the district court dismissed Muniz's disability law claims because he did "not claim that he was excluded from any program on the basis of his disability." App. 141. Rather, the

district court concluded, he was merely "denied medical treatment for his disabilities," which lies outside the scope of disability law. *Id.* This screening order of Muniz's pro se complaint was with prejudice and without leave to amend. App. 145. The district court erred.

Muniz's pro se complaint alleged the failure to provide medical care but also identified services for which he was denied meaningful access. Although if given leave to amend he could likely identify more, Muniz clearly identified at least two failures to provide disability accommodations that resulted in a lack of meaningful access to services: the removal of his soft shoe pass and the removal of his lower bunk pass. App. 39.

"Programs, services, and activities" has an expansive meaning, especially in the unique context of prisons. The Rehabilitation Act expressly defines "program or activity" to mean "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b). In the context of prisons and jails, "programs, services, and activities" includes virtually everything the facility offers, from dining to visitation to educational programming. *See, e.g., Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) (holding that "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication" inside a prison all constitute a public entity's programs or services).

Prisoners must have meaningful access to services, which requires more than being physically capable of accessing services when doing so risks injury, pain, or humiliation. "A violation of Title II … does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'" *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (quoting 28 C.F.R. § 35.150). In *Wright v. New York State Department of Corrections*, for example, a wheelchair-bound plaintiff was able to use a manual wheelchair to access services but it caused him pain, so the Second Circuit held that banning him from using a motorized wheelchair violated the ADA. 831 F.3d 64, 70 (2d Cir. 2016).

The U.S. Supreme Court's paradigmatic case on Title II of the ADA, *Tennessee v. Lane*, involved plaintiffs with mobility impairments who had to crawl or be carried up flights of stairs to reach the second floor of a courthouse. 541 U.S. 509, 513 (2004). No party suggested that the plaintiffs had meaningful access to the courts even though they could physically reach them by risking injury. Congress in passing the ADA enacted a broader mandate for equality. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012) (rejecting defendant's argument that it must only provide "necessary" accommodations as that "would require very few accommodations indeed. After all, a paraplegic can enter a courthouse by dragging himself up the front steps, so lifts and ramps would not be 'necessary' … And no facility would be required to provide

wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That's not the world we live in.").

As accommodated by a lower bunk pass, a safe place to sleep is a program, service, or activity. Courts across the county have recognized that in the prison context, a bed or safe place to sleep are "services" within the meaning of Title II. *See, e.g., Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1224 n.44 (9th Cir. 2008) (determining that "[p]roviding inmates with appropriate and adequate bedding … facilities are 'services' of the jail" for purposes of the ADA); *Dinkins v. Corr. Med. Servs.,* 734 F.3d 633, 634–35 (8th Cir. 2014) ("[D]enial of … adequate housing by reason of [plaintiff's] disability can form the basis for viable ADA … claims."); *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) ("Because of the unique nature of correctional facilities, in which jail staff control nearly all aspects of inmates' daily lives, most everything provided to inmates is a public service, program or activity, including sleeping"). The Department of Justice regulations implementing Title II reinforce this interpretation. DOJ's regulations require that prisons "ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." 28 C.F.R. § 35.152(b)(3). DOJ explained in releasing these regulations that "[i]t is essential that corrections systems fulfill their nondiscrimination and program access obligations by adequately addressing the needs of prisoners with disabilities, which include, but are not limited to … devices such as a bed transfer." 28 C.F.R. Pt. 35, App. A.

Not only is a safe place to sleep a service, courts have repeatedly reversed district courts for making the same mistake the district court did here: ruling that a lower bunk pass was medical treatment rather than disability accommodation and therefore outside the scope of disability law. In *Brown v. Meisner*, the Seventh Circuit reversed the district court, holding that the incarcerated plaintiff's "claim for failure to accommodate is not about allegedly substandard medical care" but rather about "the defendants fail[ing] to accommodate his disabling knee condition when they denied him a lower bunk." 81 F.4th 706, 709 (7th Cir. 2023). In *Munoz v. California Department of Corrections and Rehabilitation*, the plaintiff was placed on a top bunk despite a history of knee problems. 842 F. App'x 59, 62 (9th Cir. 2021). The district court held that such placement was not a disability accommodation but rather medical treatment and therefore excluded from the ADA. *Id.* The Ninth Circuit disagreed, holding that "Munoz does not argue he was denied adequate treatment for his knee injuries, only that he was denied an accommodation for his disability." *Id.*

In *Morris v. California*, an incarcerated plaintiff with a mobility impairment sued California for denying him a wheelchair and transfer to a wheelchair-accessible facility. No. 21-16059, 2022 WL 2901730, at *1 (9th Cir. 2022). The district court held that these accommodations were medical treatment, and so not actionable under the ADA. *Morris v. California*, No. 19-cv-02620-HSG, 2020 WL 2079277, at *3 (N.D. Cal. 2020). The Ninth Circuit reversed, because "[t]he district court erred in construing Morris's

requests as exclusively for medical treatment" and not also as an accommodation. *Morris*, No. 21-16059, at *1.

"Mobility" is also a service that required the accommodation of, here, soft shoes. *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("it is quite plausible that the alleged deliberate refusal of prison officials to accommodate Goodman's disability-related needs in such fundamentals as *mobility* … constituted 'exclu[sion] from participation in or ... deni[al of] the benefits of' the prison's 'services, programs, or activities.'") (emphasis added). In *Durham v. Kelley*, this Court held that an incarcerated person with a cane stated a claim under the Rehabilitation Act as the failure to provide a cane prevented him from accessing services like a shower pain-free. 82 F.4th 217, 226 (3d Cir. 2023). Although Muniz has not enumerated all the services he could only access painfully because of his lack of soft shoes, the same holds here.

Although as cited by the district court this Court has suggested that medical care is not actionable under disability law, this Court has also ensured that this exception did not swallow the rule by encroaching on genuine disability accommodations. In *Furgess v. Pennsylvania Department of Corrections*, a prisoner with leg braces brought an ADA claim alleging that he could not safely get in and out of a prison shower. 933 F.3d 285, 288 (3d Cir. 2019). The district court in *Furgess* deemed a shower not a "service" by relying on the same authority cited in *Iseley*, the Seventh Circuit's opinion in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996). *Id.* The district court held that the failure to provide an accessible shower was medical treatment, not a failure to accommodate disabilities. *Id.*

This Court reversed. "[C]omplaints about not being provided an accessible shower are not allegations of medical malpractice or disagreements about medical treatment. They are requests for reasonable accommodations so that inmates with disabilities can take a shower—just like able-bodied inmates" *Id.* at 291. Muniz's complaints about his failure to access Defendants' services compel the same conclusion here.

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed and the case should be remanded.

July 3, 2024                         Respectfully submitted,

                                    */s/ Samuel Weiss*
                                    Samuel Weiss
                                    RIGHTS BEHIND BARS
                                    416 Florida Avenue NW
                                       #26152
                                    Washington, DC 20001
                                    202-455-4399
                                    sam@rightsbehindbars.org

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and Rule 32 of the 3rd Circuit Rules. This brief contains 4,258 words excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Garamond, a proportionally spaced typeface. The text of the electronic brief is identical to the text of the paper copies. A virus detection program was run on the file and no virus was detected.

/s/    *Samuel Weiss*
Samuel Weiss

**CERTIFICATE OF SERVICE**

I certify that on July 3, 2024, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/    *Samuel Weiss*
Samuel Weiss