No. 24-1028

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————————

RONALDO MUNIZ,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
ABIGAIL LOPEZ DE LASALLE, and JOHN/JANE DOE(S),

*Defendant-Appellees.*

———————————————

On Appeal from the United States District Court for the
District of New Jersey – Docket No.: 1:22-cv-00816-NLH-MJS

═══════════════════════════════════════

BRIEF OF THE UNITED STATES and
DR. ABIGAIL LOPEZ DE LASALLE

═══════════════════════════════════════

PHILIP R. SELLINGER
United States Attorney
JOHN T. STINSON
Assistant United States Attorney
District of New Jersey
401 Market Street
Camden, NJ 08101
856-757-5139
john.stinson@usdoj.gov

# Table of Contents

Introduction .................................................................................... 1

Statement of Jurisdiction ............................................................... 3

Statement of Issues Presented ........................................................ 3

Statement of Related Cases or Proceedings ................................... 4

Statement of the Case: Factual Background .................................. 4

Statement of the Case: Procedural Background ........................... 10

Standard of Review ...................................................................... 12

Summary of the Argument ........................................................... 12

Argument ...................................................................................... 15

I. The District Court Properly Dismissed *Bivens* Claims Against
Dr. Lopez De Lasalle ................................................................... 15

   A. Muniz's Eighth Amendment Claim Presents a New Context ..... 20

   B. Special Factors Counsel Hesitation Here ................................... 30

     1. Interference in BOP's Systemic Management of Medical
     Care Counsels Against a *Bivens* Remedy ................................. 32

     2. The Availability of Alternative Relief in this Case Also
     Counsels Hesitation ................................................................... 36

II. Dr. Lopez Delasalle is Entitled to Qualified Immunity .................... 41

   A. Muniz Failed to Plead a Plausible Eighth Amendment
   Claim for Deliberate Indifference ................................................ 42

   B. Muniz Alleges No Violation of a Clearly Established Right ....... 48

III. The District Court Correctly Dismissed Plaintiff's
Rehabilitation Act Claim ................................................................ 52

Conclusion .................................................................................... 60

# Table of Authorities

**Cases**

*Alsop v. Fed. Bureau of Prisons,*
  No. 22-1933, 2022 WL 16734497 (3d Cir. Nov. 7, 2022) .............. 46, 47

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................ 49

*Anderson v. Fuson,*
  No. 23-5342, 2024 WL 1697766 (6th Cir. Feb. 1, 2024) ..................... 29

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ................................................................ 42, 48, 50

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................ 41

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................ 42

*Bistrian v. Levi,*
  696 F.3d 352 (3d Cir. 2012) ............................................................... 41

*Bistrian v. Levi,*
  912 F.3d 79 (3d Cir. 2018) ................................................................. 19

*Bivens v. Six Unknown Named Agents,*
  403 U.S. 388 (1971) ....................................................................... 1, 10

*Brown v. Meisner,*
  81 F.4th 706 (7th Cir. 2023) ........................................................ 57, 58

*Bryant v. Madigan,*
  84 F.3d 246 (7th Cir. 1996) .......................................................... 58, 59

*Bulger v. Hurwitz,*
  62 F.4th 127 (4th Cir. 2023) ........................................................ 22, 35

*Burger v. Bloomberg*,
418 F.3d 882 (8th Cir. 2005)..............................................54

*Bush v. Lucas*,
462 U.S. 367 (1983)........................................................30-32

*Carlson v. Green*,
446 U.S. 14 (1980)............................................... passim

*Chamberlain v. Chandler*,
344 F. App'x 911 (5th Cir. 2009)...............................53, 58

*Chambers v. Herrera*,
78 F.4th 1100 (9th Cir. 2023) ..................................22, 29

*Clark v. Governor of New Jersey*,
53 F.4th 769 (3d Cir. 2022).........................................5

*Correctional Servs. Corp. v. Malesko*,
534 U.S. 61 (2001).................................................21, 23, 31

*D.C. v. Wesby*,
583 U.S. 48 (2018)........................................................48

*Davis v. Passman*,
442 U.S. 228 (1979).......................................................16

*Dinkins v. Corr. Med. Servs.*,
743 F.3d 633 (8th Cir. 2014)...............................................58

*Dongarra v. Smith*,
27 F.4th 174 (3d Cir. 2022).............................................23

*Durham v. Kelley*,
82 F.4th 217 (3d Cir. 2023)....................................53, 57, 58

*Egbert v. Boule*,
596 U.S. 482 (2022)................................................ passim

*Estelle v. Gamble*,
429 U.S. 97 (1976)........................................................43

iii

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ........................................................ 19, 29, 43, 46

*Fisher v. Hollingsworth*,
  No. 22-2846, ___ F.4th ___,
  2024 WL 3820969 (3d Cir. Aug. 15, 2024) ................................. passim

*Fitzgerald v. Corr. Corp. of Am.*,
  403 F.3d 1134 (10th Cir. 2005) ........................................................ 54

*Flowers v. Francoise*,
  No. 22-1077, 2022 WL 2447899 (3d Cir. July 6, 2022) ...................... 45

*Frazier v. Bond*,
  Civ. No. 18-16774-JBS,
  2019 WL 20043700 (D.N.J. May 6, 2019) ....................................... 54

*Furgess v. Pennsylvania Dep't of Corr.*,
  933 F.3d 285 (3d Cir. 2019) ........................................................ 57

*Ginyard v. Del-Prete*,
  Civ. No. 20-1947, 2022 WL 17492412 (W.D. Pa. Sept. 21, 2022) ....... 45

*Ham v. Greer*,
  269 F. App'x 149 (3d Cir. 2008) ........................................................ 46

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ........................................................ 41

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) ........................................................ 16, 17, 21, 30

*Hernandez v. Mesa*,
  582 U.S. 548 (2017) ........................................................ 17

*Hodge v. United States Dep't of Justice*,
  372 F. App'x 264 (3d Cir.2010) ........................................................ 46

*Holton v. Finley*,
  Civ. No. 21-0737, 2024 WL 1919238 (M.D. Pa. Mar. 21, 2024) .... 29, 40

iv

*Hower v. Damron*,
No. 21-5996, 2022 WL 16578864 (6th Cir. Aug. 31, 2022) ................ 40

*Iseley v. Beard*,
200 F. App'x 137 (3d Cir. 2006) .......................................... 54

*Jackson v. McNeil*,
No. 20-35991, 2023 WL 3092302 (9th Cir. Apr. 26, 2023) ................. 40

*Kalu v. Spaulding*,
No. 23-1103, ___ F.4th ___,
2024 WL 3884268 (3d Cir. 21, 2024) ................................. 23, 26, 29, 36

*Kowalski v. Postmaster Gen. of U.S.*,
811 F. App'x 733 (3d Cir. 2020) .................................... 53, 58

*Lane v. Pena*,
518 U.S. 187 (1996) .................................................. 53, 58

*Looper v. Jones*,
No. 22-40579, 2023 WL 5814910 (5th Cir. Sept. 8, 2023) ................... 30

*Mack v. Yost*,
968 F.3d 311 (3d Cir. 2020) ......................................... 37-39

*McClintic v. Pa. Dep't of Corr.*,
Civ. No. 12-6642, 2013 WL 5988956 (E.D. Pa. Nov. 12, 2013) .......... 54

*Minneci v. Pollard*,
565 U.S. 118 (2012) .................................................. 21

*Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*,
834 F.2d 326 (3d Cir. 1987) ......................................... 44

*Morris v. California*,
No. 21-16059, 2022 WL 2901730 (9th Cir. 2022) ....................... 57, 58

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997) ......................................... 43

*Mullenix v. Luna*,
577 U.S. 7 (2015) .................................................... 48

*Munoz v. Cal. Dep't of Corr. & Rehab.*,
    842 F. App'x 59 (9th Cir. 2021) .................................................... 57, 58

*Murray v. Bledsoe*,
    650 F.3d 246 (3d Cir. 2011) ............................................................. 41

*Nellson v. Doe*,
    No. 21-6206, 2023 WL 3336689 (4th Cir. May 10, 2023) .............. 22, 30

*Noe v. United States Gov't*,
    No. 23-1025, 2023 WL 8868491 (10th Cir. Dec. 22, 2023) .................. 30

*Owens v. Rutgers Univ. Behav. Health Care*,
    Civ. No. 15-4730-JBS, 2016 WL 7424482 (D.N.J. Dec. 23, 2016) ....... 54

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .......................................................................... 42

*Pearson v. Prison Health Serv.*,
    850 F.3d 526 (3d Cir. 2017) ........................................................ 43, 44

*Pension Tr. Fund for Operating Engineers v. Mortg. Asset
    Securitization Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2013) ............................................................... 5

*Pettibone v. Russell*,
    59 F.4th 449 (9th Cir. 2023) ............................................................ 40

*Rivera v. Redfern*,
    98 F.4th 419 (3d Cir. 2024) .............................................................. 12

*Rosario v. Wash. Mem. Hosp.*,
    Civ. No. 12-1799, 2013 WL 2158584 (W.D. Pa. May 17, 2013) ........... 55

*Saucier v. Katz*,
    533 U.S. 194 (2001) .......................................................................... 49

*Schweiker v. Chilicky*,
    487 U.S. 412 (1988) .......................................................................... 32

*Shorter v. United States*,
    12 F.4th 366 (3d Cir. 2021) .............................................................. 19

*Silva v. United States*,
45 F.4th 1134 (10th Cir. 2022) ........................................... 38

*Simmons v. Navajo Cty.*,
609 F.3d 1011 (9th Cir. 2010) ............................................. 58

*Smith v. Bolava*,
632 F. App'x 683 (3d Cir. 2015) .......................................... 44

*Spady v. Bethlehem Area Sch. Dist.*,
800 F.3d 633 (3d Cir. 2015) ......................................... 49, 50

*Stanard v. Dy*,
88 F.4th 811 (9th Cir. 2023) .............................................. 25

*Szemple v. Univ. of Med. & Dentistry of N.J.*,
451 F. App'x 187 (3d Cir. 2011) .......................................... 44

*Talley v. Clark*,
No. 19-3078, 2023 WL 118470 (3d Cir. Jan. 6, 2023) .................. 54, 59

*Tardif v. City of New York*,
991 F.3d 394 (2d Cir. 2021) ............................................... 59

*U.S. ex rel. Walker v. Fayette Cty., Pa.*,
599 F.2d 573 (3d Cir. 1979) ......................................... 44, 47

*United States v. Muniz*,
Crim. No. 4:14-91, 2021 WL 965987 (E.D. Tex. Mar. 12, 2021) ....... 4, 9

*Vanderklok v. United States*,
868 F.3d 189 (3d Cir. 2017) ............................................... 37

*Vaughn v. Bassett*,
No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024) ................ 25

*Vega v. United States*,
881 F.3d 1146 (9th Cir. 2018) ............................................. 38

*Westlake v. Lucas*,
537 F.2d 857 (6th Cir. 1976) .............................................. 44

*Wilkie v. Robbins,*
 551 U.S. 537 (2007) ............................................................ 37

*Xi v. Haugen,*
 68 F.4th 824 (3d Cir. 2023) ............................................. 12

*Yeskey v. Pa. Dep't of Corr.,*
 118 F.3d 168 (3d Cir. 1997) ............................................. 52

*Ziglar v. Abbasi,*
 582 U.S. 120 (2017) ................................................... passim

**<u>Statutes</u>**

18 U.S.C. § 3582(c)(1)(A) ....................................................... 4

18 U.S.C. § 3621(b) ................................................................ 34

18 U.S.C. § 3621(i)(1) ............................................................ 32

18 U.S.C. § 4001(b)(1) .......................................................... 36

28 U.S.C. § 1291 ..................................................................... 3

28 U.S.C. § 1331 ..................................................................... 3

28 U.S.C. § 1915 .............................................................. 10, 52

28 U.S.C. § 1915A ................................................................ 52

29 U.S.C. § 794(a) ................................................................ 55

42 U.S.C. § 1983 ................................................................... 15

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ......................................................... 43

**<u>Regulations</u>**

28 C.F.R. §§ 0.29-0.29f ........................................................ 40

## INTRODUCTION

Plaintiff-Appellant Rolando Muniz ("Muniz") appeals from dismissals of his claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and § 504 of the Rehabilitation Act by the United States District Court for the District of New Jersey. Muniz alleged that Dr. Abigail Lopez De Lasalle, Medical Director at the Federal Correctional Institution at Fairton, New Jersey ("FCI Fairton"), was deliberately indifferent to his medical needs by evaluating his recent blood sugar test results and deciding to take him off a medication and other medical interventions for diabetes in keeping with Federal Bureau of Prisons ("BOP") clinical guidance and other BOP practices. Muniz further alleged that Dr. Lopez De Lasalle's medical decisions constituted disability discrimination resulting several months later in pain and the loss of his toe to a bacterial infection.

The District Court dismissed Muniz's Rehabilitation Act claim at pre-screening and then granted the Defendants' motion to dismiss the *Bivens* claims on the grounds that such a judge-made remedy was unavailable after the Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482 (2022). Specifically, the District Court held that Muniz's claim

was meaningfully different from *Carlson v. Green*, 446 U.S. 14 (1980), and special factors counseled against creating a new *Bivens* remedy.

Muniz's claims implicate BOP clinical guidance for diabetes management as well as the agency's systemic practices involving medical, administrative, prison transfer, and resource-allocation decisions—none of which were at issue in *Carlson*. Granting a constitutional damages remedy here would require significant judicial intrusion into clinical decisions regarding diabetes management that cannot be separated from BOP's overall day-to-day management of medical care in the federal prison system. Indeed, Muniz's *Bivens* claim is not that Dr. Lopez De Lasalle denied him discrete emergency care that clearly was medically necessary, as in *Carlson*. Muniz instead argues that the doctor's decisions about his care—based on and informed by recent test results and BOP clinical guidance—constitute deliberate indifference such that a federal court, without congressional authorization of the remedy, should devise a damages cause of action. This would effectively direct changes to day-to-day clinical decisions made by BOP medical staff and implicates several special factors counseling hesitation.

In all respects, Muniz brings claims of medical malpractice challenging that healthcare decisions made by BOP were incorrect or negligent. This removes the matter from the realm of *Bivens* and the Rehabilitation Act. The District Court's decisions should be affirmed.

## STATEMENT OF JURISDICTION

The District Court had "federal question" jurisdiction pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1.     Did the District Court correctly hold that Muniz's Eighth Amendment claim for damages presented a "new context" from *Carlson*?

2.     Did the District Court correctly hold that special factors counseled hesitation in permitting Muniz's Eighth Amendment claim for damages to proceed?

3.     Is Dr. Lopez De Lasalle entitled to qualified immunity from any Eighth Amendment claim because Muniz failed to plead a plausible claim of deliberate indifference?

4.     Is Dr. Lopez De Lasalle entitled to qualified immunity from any Eighth Amendment claim because Muniz failed to allege a violation of any clearly established right?

5. Did the District Court correctly dismiss Muniz's Rehabilitation Act claim because it involved allegations of medical negligence not disability discrimination?

## STATEMENT OF RELATED CASES OR PROCEEDINGS

Though not a civil matter, Muniz raised many of the same issues that he pursues here in a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), filed under seal on January 11, 2021 with his sentencing court. *See United States v. Muniz*, Crim. No. 4:14-91 (E.D. Tex.), ECF No. 942 (motion filed under seal). The sentencing court made findings of fact, including that in 2019 and 2020, "the BOP appears to be monitoring and treating Muniz's diabetes appropriately[,]" and denied the motion. *See United States v. Muniz*, Crim. No. 4:14-91, 2021 WL 965987 (E.D. Tex. Mar. 12, 2021).

## STATEMENT OF THE CASE:
## FACTUAL BACKGROUND

Muniz's claims challenge Dr. Lopez De Lasalle's decision to take Muniz off of one diabetes medication and two associated care interventions, based on encouraging blood test results placing him into the "pre-diabetic" range and subject to further scheduled testing in four months. The claims also mention the course and timing of treatment

provided by other unnamed BOP staff, not including Dr. Lopez De Lasalle, when Muniz developed an infected sore on his toe several months later in November 2019.[1]

In his Complaint, Muniz alleged that he was diagnosed as diabetic in 2011. Appellant's Appendix ("AA") 41.[2] At various facilities, BOP medical providers prescribed metformin to control this condition. AA 41-42. By June 2019, Muniz's A1C blood-sugar level dropped to 6.1 (AA 42, 133), which is below the accepted threshold for an active diabetes diagnosis. *See, e.g.,* BOP, Clinical Guidance: Management of Diabetes at 3 (Mar. 2017).[3] It is also below BOP's clinical guidance for when "medication is generally recommended." *Id.* at 13 ("Initiation of

---

[1]    The unnamed BOP staff members have not been identified or served, AA 19, and the United States Attorney does not represent them.

[2]    Appellees are using the appendix numbers at the bottom center of the pages of Appellant's Appendix.

[3]    *See* https://www.bop.gov/resources/pdfs/201703_diabetes.pdf;  *see also* https://www.cdc.gov/diabetes/diabetes-testing/prediabetes-a1c-test.html (both last visited August 30, 2024). The Court can take judicial notice of such public records whether or not they appear in a formal evidentiary record. *See, e.g.*, *Clark v. Governor of New Jersey*, 53 F.4th 769, 772 n.5 (3d Cir. 2022); *Pension Tr. Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 277 n.8 (3d Cir. 2013).

medication is generally recommended when the A1C is >7.0–7.5%, or above the individualized goal."). Muniz's medical provider at FCI Yazoo, Dr. Alexander, reduced the dosage of his medication in June 2019 in light of his A1C results. AA 42, 133.

Shortly thereafter, in early July 2019, BOP transferred Muniz to FCI Fairton in New Jersey. AA 42, 135. Defendant Dr. Lopez De Lasalle conducted an intake examination where she made the clinical decision to discontinue Muniz's metformin prescription based on his recent A1C result of 6.1. AA 42-43, 134. Plaintiff alleges that he "pleaded" to remain on metformin, but Dr. Lopez De Lasalle responded—consistent with the BOP diabetes guidance discussed above—that he did not need the medication. *Id*. Dr. Lopez De Lasalle also discontinued his "soft shoe" and "lower bunk" passes because, in the doctor's view, he did not need them. *Id*. The decision regarding footwear followed BOP clinical guidance, which states that the "current version of the BOP standard-issue work shoe addresses most concerns of inmates without diabetes[.]" BOP, Clinical Guidance: Management of Diabetes at 28.

At the July 2019 intake examination, Dr. Lopez De Lasalle ordered updated A1C blood testing, among other lab tests, by November 12, 2019.

6

AA 93. This was well within BOP clinical guidance for inmates in the "pre-diabetic" range, who BOP recommends receive A1C testing annually. BOP, Clinical Guidance: Management of Diabetes at 5. BOP's guidance also states that "[t]here is no benefit in ordering the A1C at less than three-month intervals[,]" *id.* at 13, so there was no clinical requirement that Dr. De Lasalle retest Muniz's A1C from his June result from FCI Yazoo.

Almost four months later, on November 5, 2019, Muniz submitted an "Inmate Sick Call" slip reporting an "open sore on my toe with discharge drainage" for one week. AA 44, 95. BOP medical staff saw him on November 7, 2019, noted a past medical history of diabetes, and ordered oral antibiotics and wound care. AA 44, 95-96, 102 (noting compliance with daily wound care and antibiotics). Muniz alleges that over six of the next ten days, the unidentified Doe defendants[4] "refused

---

[4] These unidentified defendants remain unserved, are not before the Court in this appeal, and as noted above, are not represented by the United States Attorney. The District Court dismissed the claims against the unnamed and unserved defendants, and the Court should not recognize a *Bivens* remedy against them without Muniz first naming these individuals and giving them an opportunity to brief any issues pertinent to them.

the wound care citing staff shortages"—though the medical records he attached to his Complaint reflect that Muniz was a no-show on at least one day. AA 44, 98.

On November 18, 2019, Muniz appeared for wound care, and BOP medical staff evaluated him and referred him out to a local emergency department for further evaluation. AA 102-05. Inspira Medical Center Vineland changed his antibiotic, performed an MRI, and made the determination that the infection on Muniz's toe necessitated a partial amputation of that toe. AA 108-11. Muniz consented to the partial amputation. *Id*. Muniz does not allege that Dr. Lopez De Lasalle was involved in the treatment of his toe wound in November 2019 that preceded his toe amputation.

BOP obtained updated A1C results for Muniz in November 2019, placing him back in the "diabetic" range. AA 45, 128. As a result, upon Muniz's return to FCI Fairton, Dr. Lopez De Lasalle prescribed metformin at 500 mg daily as well as soft shoe and lower bunk passes. AA 128.

In January 2020, Muniz submitted a Form BP-9 to the Acting Warden of FCI Fairton complaining of inadequate medical care by Dr.

Lopez De Lasalle and demanding money damages. Supplemental Appendix ("SA") 27-28. The Acting Warden responded in March 2020, noting among other things, that demands for money damages "will need to go through the Tort Process" through the Northeast Regional Office ("NERO"). SA 30. Muniz appealed that response to NERO. SA 32-33. On January 26, 2021, NERO denied the appeal and directed Muniz to submit a tort claim for damages consistent with the Federal Tort Claims Act and BOP regulations and policy. SA 35. Muniz appealed this decision to the BOP Central Office. SA 39-40. On June 21, 2021, the BOP Central Office denied his appeal from the NERO determination, and again directed him to seek any demands for money damages through the proper channels for tort claims. SA 42.

Muniz submitted compassionate release requests in April and August 2020 to the Warden of FCI Fairton, and later filed, in his criminal case in the United States District Court for the Eastern District of Texas, a compassionate release motion regarding his diabetes and late-2019 medical care. *Muniz*, 2021 WL 965987 at *2. His sentencing court denied that motion on March 12, 2021, finding that BOP had properly monitored and treated his diabetes. *Id*. at *1.

On October 12, 2021, BOP received an unsigned and undated SF-95 Claim for Damage, Injury, or Death, demanding $1 million. SA 4-9. BOP rejected this tort claim because it was unsigned. SA 11. On December 28, 2021, BOP received a signed SF-95 claim dated December 6, 2021. SA 13-16.

## STATEMENT OF THE CASE:
## PROCEDURAL BACKGROUND

On February 15, 2022, Muniz filed a "Pro Se Civil Complaint" against the United States, the Federal Bureau of Prisons, Dr. Lopez De Lasalle, and two unnamed defendants "of the Fairton Health Services." AA 30-137. Muniz pleaded claims for medical malpractice, for deliberate indifference in violation of his Eighth Amendment rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and for violations of § 504 of the Rehabilitation Act. *Id.* Muniz demanded $10 million in damages. *Id.*

The District Court screened the Complaint pursuant to 28 U.S.C. § 1915. AA 138-46. The District Court dismissed any FTCA claim against the BOP or the individual defendants for lack of jurisdiction; any *Bivens* claim against the United States or BOP for lack of jurisdiction; and any claim under § 504 of the Rehabilitation Act for failure to state a claim.

*Id*. The District Court permitted the *Bivens* claims to proceed against the individual defendants and the FTCA claim to proceed against the United States. *Id*. The District Court appointed pro bono counsel for Muniz. *Id*.

The United States and Dr. Lopez De Lasalle moved to dismiss the Complaint in early 2023. Dist. Ct. ECF 22. On December 7, 2023, the District Court granted the defendants' motion. AA 3-23. Regarding the *Bivens* claims, the District Court held that "*Bivens* does not afford [Muniz] a remedy absent Congressional action" in light of *Egbert v. Boule*, 596 U.S. 482 (2022), and similar rulings. AA 19. Regarding the FTCA claim, the District Court held that "Plaintiff did not complete the exhaustion process before filing the complaint, so the Court lacks jurisdiction over Plaintiff's FTCA claims." AA 21-22.

On December 29, 2023, Muniz appealed the District Court's order granting the defendants' motion to dismiss. AA 1. Muniz applied to proceed *in forma pauperis* in his appeal. ECF No. 8. The Court granted IFP and directed Muniz to submit argument in support of his appeal for the Court to consider referral to a screening panel. ECF No. 11. Muniz submitted argument challenging the District Court's rulings dismissing (1) the *Bivens* claims against Dr. Lopez De Lasalle and the anonymous

individual defendants; and (2) the § 504 Rehabilitation Act claim. ECF No. 12. Muniz did not submit argument regarding dismissal of the FTCA claim. *Id*. The Court declined to submit this appeal to a screening panel and instead issued a briefing order. ECF Nos. 13-14.

## STANDARD OF REVIEW

This Court reviews the District Court's dismissal of the complaint *de novo. Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023). Plenary review also applies to a determination of whether qualified immunity applies to the actions of a prison official. *Rivera v. Redfern*, 98 F.4th 419, 422 (3d Cir. 2024).

## SUMMARY OF THE ARGUMENT

Rolando Muniz brought a medical malpractice lawsuit against the United States. The District Court properly dismissed his additional claims under *Bivens* and the Rehabilitation Act that involve the identical issues and facts as his negligence-based challenge to his medical care.

First, the Court should affirm the District Court's conclusion that, under recent Supreme Court case law, Muniz's Eighth Amendment claim presents a new context distinct from *Carlson*. Specifically, Muniz seeks a constitutional damages remedy that risks disruptive intrusions by the judiciary into how BOP manages healthcare more generally, including

how BOP staff handle medical review of inmates transferring between facilities and whether medical staff, without facing personal liability in constitutional damages, can exercise professional discretion to change a course of care (for pre-diabetes or other conditions) over an inmate's objections where the decision is supported by BOP medical guidance and test data.

Second, the Court should affirm the District Court's conclusion that special factors counsel hesitation in implying a new *Bivens* remedy here. Specifically, the same judicial intrusions that create a new context here also counsel hesitation because a new constitutional remedy would urge changes to how BOP provides care to inmates nationwide, and in addition, inmates like Muniz have alternative remedies available to them without constitutional damages against individual federal employees.

Third, the Court also can affirm dismissal of Muniz's Eighth Amendment claim on the first prong of qualified immunity because he fails to state a plausible claim. At best, Muniz pleads a claim of professional negligence, not of deliberate indifference, because he received medical care from BOP and challenges the adequacy of such care

without any plausible allegations that Dr. Lopez De Lasalle knowingly ignored a substantial risk of serious harm.

Fourth, the Court also can affirm dismissal of Muniz's Eighth Amendment claim on the second prong of qualified immunity. Muniz's claim urges that there is an established right to maintain a medical treatment program for diabetes even after blood tests show that condition in remission. There is no established line of cases notifying BOP medical staff of any such right, so qualified immunity applies here.

Fifth, the Court should affirm the dismissal of Muniz's Rehabilitation Act claim on grounds that he failed to state a claim. This Court does not recognize disability discrimination claims arising out of allegations of medical malpractice or inadequate medical care, as Muniz has pleaded here. And even if the Court perceives that Muniz experienced some disability discrimination at FCI Fairton, his medically-based claim still fails the strict causation requirement under the Rehabilitation Act that the discrimination be the "sole" cause of the alleged injury. Finally, federal courts lack jurisdiction to consider Rehabilitation Act claims for money damages against federal executive branch agencies.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY DISMISSED *BIVENS* CLAIMS AGAINST DR. LOPEZ DE LASALLE

Muniz seeks to bring individual liability claims against Dr. Lopez De Lasalle—on grounds that she was deliberately indifferent to his serious medical need in violation of the Eighth Amendment—for the medical decisions she made under BOP clinical guidance for diabetes care.[5] The District Court, however, correctly identified that this case presents a new context distinct from *Carlson v. Green*, 446 U.S. 14 (1980), and special factors counsel hesitation against creating a new, judge-made remedy here.

Unlike 42 U.S.C. § 1983, a federal statute providing for damages suits against state officers for constitutional violations, Congress never "create[d] an analogous statute for federal officials." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). In *Bivens*, the Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful

---

[5] As noted above, these unidentified defendants remain unserved, are not before the Court in this appeal, and are not represented by the United States Attorney. The Court should not recognize a *Bivens* remedy against them without Muniz first naming these individuals and giving them an opportunity to brief any issues pertinent to them.

arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). After *Bivens*, the Court fashioned two other judicial remedies under the Constitution: first, for a Fifth Amendment sex discrimination claim against a congressman who fired a staffer, *Davis v. Passman*, 442 U.S. 228, 230 (1979); and second, for an Eighth Amendment deliberate indifference claim by the estate of a federal prisoner who died after prison officials failed to provide "competent medical attention for some eight hours" as the prisoner suffered from a deadly asthma attack, a life-threatening emergency for which an obvious medical response was required, *Carlson*, 446 U.S. at 16 n.1. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

Over the last four decades, the Supreme Court has declined twelve times "to imply a similar cause of action for any other alleged constitutional violations." *Egbert*, 596 U.S. at 486 (collecting cases). The Supreme Court's three *Bivens* cases were decided during an "*ancien*

*régime*" when "the Court assumed it to be a proper judicial function to . . . imply causes of action not explicit in the statutory text itself." *Ziglar*, 582 U.S. at 131-32. The Supreme Court has now "come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert*, 596 U.S. at 491. (cleaned up).

The Supreme Court emphasized that expanding any of its three *Bivens* cases beyond its precise context "is a disfavored judicial activity." *Id.* (quoting *Ziglar*, 582 U.S. at 135). Indeed, the Supreme Court's "watchword is caution," *Hernandez*, 140 S. Ct. at 742, and it urged that if "called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 596 U.S. at 502. Thus, through its latest cases, the Supreme Court "made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts[.]" *Id.* at 486; *see also id.* at 491 ("At bottom, creating a cause of action is a legislative endeavor.").

The "antecedent" question in every *Bivens* case is whether a court should accept a plaintiff's invitation to craft a judicial damages remedy in the absence of affirmative congressional authorization. *Hernandez v.*

*Mesa*, 582 U.S. 548, 553 (2017). Courts have a "concomitant responsibility" to address this issue and "evaluate any grounds that counsel against *Bivens* relief." *Egbert*, 596 U.S. at 497 & n.3. When asked to imply a remedy, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 492. "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Id.* (citing *Ziglar,* 582 U.S. at 135-36).

"To inform a court's analysis" of this question, the Supreme Court has "framed the inquiry as proceeding in two steps." *Id.* First, a court asks if a case "presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (quoting *Ziglar*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 492 (quoting *Ziglar*, 582 U.S. at 136).

In *Egbert*, the Court clarified that while its "cases describe two steps, those steps often resolve to a single question: whether there is any

reason to think that Congress might be better equipped to create a damages remedy." *Id.* The Court said why: "[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" *Id.* The Court went on to explain that it had "identified several examples of new contexts . . . largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action," and "never offered an 'exhaustive' accounting of [new context] scenarios" precisely "because no court could forecast every factor that might 'counsel hesitation.'" *Id.* at 492-93.

The Third Circuit very recently held that the Supreme Court's decision in *Egbert* "tightened the *Ziglar* test and, in doing so, made a strong statement that lower courts should not extend *Bivens* beyond the contexts recognized in *Bivens, Davis*, and *Carlson.*" *Fisher v. Hollingsworth*, No. 22-2846, ___ F.4th ___, 2024 WL 3820969, at *4 (3d Cir. Aug. 15, 2024). In this opinion, the Court reversed its prior rulings recognizing *Bivens* remedies under the Eighth Amendment in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), and *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021), that "relied on *Farmer* [*v. Brennan*, 511 U.S. 825

(1994)] at the first step" of the *Abassi* framework, a position the Court no longer found tenable after *Egbert*. *Fisher*, 2024 WL 3820969, at \*4.

## A. Muniz's Eighth Amendment Claim Presents a New Context

To assist in determining whether a situation was meaningfully different from one of the three existing *Bivens* remedies and therefore considered a "new context," *Ziglar* provided a non-exhaustive list of considerations: rank of officers involved, the constitutional right at issue, generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to a problem or emergency, statutory or other legal mandate under which the officer was operating, risk of disruptive intrusion by the judiciary into the functioning of other branches of government, and the existence of potential special factors not previously considered. *Ziglar*, 582 U.S. at 139-140.[6] Since then, the Supreme Court clarified that this was not meant to be an "exhaustive" list because no court could forecast every factor that might create a new

---

[6]     Thus, the Supreme Court urged lower courts to look at "special factors" both to determine whether a case creates a "new context" and also whether such factors "counsel hesitation" regarding creating a new constitutional remedy.

context. *Egbert*, 596 U.S. at 492. New context is a "broad" inquiry. *Hernandez*, 140 S. Ct. at 743. Even if differences between a case and *Carlson* are "perhaps small, at least in practical terms," the inquiry is "easily satisfied." *Ziglar*, 582 U.S. at 147-49 ("Yet even a modest extension is still an extension.").

In keeping with the above, the "new context" inquiry is required, and no alignment with *Carlson* is assumed just because Muniz's claims invoke the same constitutional right under the Eighth Amendment and a similar "mechanism of injury"—that is, broadly, an alleged failure to provide adequate medical treatment. *Abbasi*, 582 U.S. at 139 ("That approach is inconsistent with . . . *Malesko*."). Indeed, in *Malesko*, the Supreme Court declined a *Bivens* remedy for a federal prisoner who suffered a heart attack, fell, and injured his ear after he was made to climb stairs to his fifth-floor bedroom in a privately operated halfway house, even where prison officials were aware of the plaintiff's previously diagnosed heart condition. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 64 (2001); *see also Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (declining a *Bivens* remedy for federal prisoner's medical deliberate indifference claim against private prison employees). In this vein, the

Supreme Court recently made clear that "almost parallel circumstances" or a similar "mechanism of injury" are "superficial similarities" that do not "support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495 (quoting *Abbasi*, 582 U.S. at 139)). Circuit courts are implementing this closer review for a "new context" under *Egbert. See, e.g., Chambers v. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023) (concluding that, even if a claim arises under the same constitutional right, "the other *Egbert* factors would need to be addressed to determine whether this claim arises in a different context"); *Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at *4 (4th Cir. May 10, 2023) ("Even claims alleging deliberate indifference to an inmate's medical needs, though they 'involve the same right and mechanism of injury as in Carlson,' may 'still present different contexts.'" (quoting *Bulger v. Hurwitz*, 62 F.4th 127, 138 (4th Cir. 2023)).

Muniz's claims implicate BOP clinical guidance and practices concerning the treatment of diabetes as well as the agency's systemic administration of prison healthcare, including medical, administrative, and inmate transfer practices that were not at issue in *Carlson*. Muniz's claims thus raise a different "risk of disruptive intrusion by the judiciary"

into prison functions than *Carlson* contemplated. His claims also bear on "the generality or specificity of official conduct" and the "extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted," and they implicate "special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S. at 139-140.

The Supreme Court in *Ziglar* cautioned "against allowing a *Bivens* action" where asserted claims "would call into question the formulation and implementation of a general policy," even if the claims are "confined to the conduct of a particular Executive Officer in a discrete instance." *Id.* at 141. That is because the purpose of a *Bivens* damages remedy is to "deter[] the unconstitutional acts of individual officers," not the "conduct of a policymaking entity." *Malesko*, 534 U.S. at 71; *see Ziglar*, 582 U.S. at 140-41.

Thus, the District Court was correct in concluding that Muniz's claims against Dr. Lopez De Lasalle present a new context distinct from *Carlson*. AA 17 (citing *Dongarra v. Smith*, 27 F.4th 174, 180-81 (3d Cir. 2022)). First and foremost, Muniz's "claim concerns a different kind of officer misconduct." *Kalu v. Spaulding*, No. 23-1103, ___ F.4th ___, 2024 WL 3884268, at *7 (3d Cir. 21, 2024). This is not a case addressing an

obvious failure or refusal to provide needed care in emergent circumstances. *See Carlson*, 446 U.S. at 16, n. 1 (finding that prison staff "failed to give [inmate Jones] competent medical attention for some eight hours after he had an asthmatic attack, administered contraindicated drugs which made his attack more severe, attempted to use a respirator, known to be inoperative, which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital"). Here, BOP transferred Muniz from FCI Yazoo to FCI Fairton, where Dr. Lopez De Lasalle conducted an intake medical examination on him on July 10, 2019. AA 42-43, 135. Based on his most recent A1C test result of 6.1 from spring 2019 and other information reviewed during the examination, Dr. Lopez De Lasalle concluded that Muniz was no longer an active diabetic—a conclusion consistent with BOP's own medical guidance and that of the CDC.[7] The doctor then made decisions regarding his healthcare plan to (1) discontinue metformin and two other medical interventions for diabetes; and (2) re-test his A1C in mid-November 2019, a period of four months. *Id.*

---

[7]     *See* footnote 3, *supra.*

In summary, Muniz challenges a data-informed, long-term care decision about a chronic condition at a point of remission, which BOP physicians indicated they would re-evaluate in a matter of months. The circumstances are thus materially distinct from *Carlson*. They are also distinct from a case like *Stanard v. Dy*, 88 F.4th 811, 817 (9th Cir. 2023), where medical providers "did not offer [the inmate] some alternate timeline" but instead "repeatedly informed [the inmate] that he would not receive *any* HCV treatment" at all. *See id.* ("defendants 'relied upon' outdated medical records in refusing him care, including an APRI score that was eight years old").[8] Muniz requests that a federal court insert itself into commonplace decisions regarding healthcare management and direct that a BOP physician like Dr. Lopez De Lasalle may face personal liability if she fails to honor the inmate's demands over BOP medical guidance and the physician's own informed professional judgment.

---

[8]  Plaintiff also cites *Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024), which presents a different fact context. In *Vaughn*, an inmate "suffered a life-threatening injury" and was denied the care that outside physicians stated was necessary to address it. *Id.* at *1. Unlike in *Vaughn*, Muniz's claims here concern treatment decisions that BOP medical professionals made based on records and data that included a pre-scheduled follow-up evaluation.

Clearly, "the nature of the official misconduct" here is "sufficiently different to render" Muniz's "claim a modest extension of *Carlson*." *Kalu*, 2024 WL 3884268 at *7.

Muniz's claim against Dr. Lopez De Lasalle attacks differences in approaches to care between different BOP facilities, and thereby implicates BOP's housing and transfer practices as well as issues relating to systemic management of medical care between facilities. Muniz alleges that BOP placed him in administrative segregation at FCI Marianna and FCI Yazoo—to which he attributes weight loss and the lowering of his A1C. AA 42. BOP then transferred Muniz to FCI Fairton where he lived in the general population—to which he attributes his rise in A1C from 6.1 in June 2019 to 6.9 in late November 2019. AA 42-44. Muniz seems to take the position in his Complaint that Dr. Lopez De Lasalle had to rely upon his comments about such housing changes and was not entitled to rely on Muniz's recent medical records in July 2019, including his most recent A1C test of 6.1. AA 42-43.

Not only was Dr. De Lasalle permitted to rely on those medical records, but her decisions based on those records fell well within BOP's clinical guidance. That guidance states that inmates in the pre-diabetic

range need only be tested annually and, at any event, "[t]here is no benefit in ordering the A1C at less than three-month intervals" whether the inmate was pre-diabetic or diabetic. BOP, Clinical Guidance: Management of Diabetes at 3, 5, 13. Muniz's argument that federal courts can impose constitutional damages on a physician who follows clinical guidance by declining to re-run tests that BOP very recently performed involves BOP's medical practices as much or more than the conduct of the individual physician. Similarly, Muniz's constitutional claim contains the suggestion that, despite BOP clinical guidance on diabetes care, an individual physician must re-test an inmate who recently transferred from another facility—a proposition that would involve federal courts rewriting BOP policy for intra-system transfers. *See, e.g.,* BOP Program Statement 6031.04 (June 3, 2014) at 23-25.[9]

*Carlson* involved no such interference with the written clinical guidance of BOP or BOP policy concerning inmate transfers. Similarly, unlike *Carlson*, which involved emergent circumstances, Muniz seeks a

---

[9]    *See* https://www.bop.gov/policy/progstat/6031_004.pdf (last visited August 30, 2024). This policy statement was operational in 2019, but was replaced in 2024 by BOP Program Statement 6031.005.

constitutional damages remedy in a commonplace instance where a BOP physician exercises the everyday medical discretion afforded her instead of mechanically keeping a prior treatment plan that the inmate preferred. *See Egbert*, 596 U.S. at 500 (noting "common" claims are "more likely to impose a significant expansion of Government liability," and "counsels against permitting *Bivens* relief") (cleaned up); *Fisher*, 2024 WL 3820969, at *6 (finding that where a proposed *Bivens* remedy will "have different 'systemwide consequences' than *Carlson*'s cause of action[,]" it presents a new context).

Muniz's claims thus represent a greater risk of disruptive intrusion into BOP's broader administration of prison healthcare and, unlike *Carlson*, are less targeted necessarily at Dr. Lopez De Lasalle's treatment decisions. Instead, the claims are designed to send a message to BOP as an agency to administer medical care in a manner that (1) credits inmate requests regarding healthcare and use of medications over the informed conclusions of medical professionals; and (2) involves new "redundancy" measures in testing and other intake procedures when BOP moves an inmate. A *Bivens* action should not permit general judicial supervision over BOP medical staff and the agency's administration of medical care;

nor are courts well-suited to evaluate individual healthcare decisions that implicate (and could alter) BOP's clinical guidance as well as the agency's management, resource, and security constraints. *See, e.g., Holton v. Finley*, Civ. No. 21-0737, 2024 WL 1919238, at *10 (M.D. Pa. Mar. 21, 2024), *R&R adopted*, 2024 WL 1913172 (M.D. Pa. May 1, 2024) (observing that granting a judicial remedy regarding an inmate's medical claims risked system-wide changes to how BOP administers care).

Accordingly, Muniz's claims and the acts of which he complains do not resemble *Carlson* and do not fulfill the fundamental purpose of a *Bivens* remedy. Like several other recent circuit court decisions, the circumstances here present a new context distinguishable from *Carlson*.[10] *See Chambers*, 78 F.4th at 1108 (9th Cir. 2023) (discussed *supra*); *Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *3 (6th Cir. Feb. 1, 2024) (concluding that the inmate's allegations of denial of

_____

[10]    Muniz also attempts to analogize his claim to *Farmer v. Brennan*, 511 U.S. 825 (1994). *Farmer*, however, is not named by the Supreme Court in *Abbasi* or *Egbert* as one of the three constitutional damages remedies created by that Court, *see Fisher*, 2024 WL 3820969, at *4, nor is *Farmer* factually similar to either *Carlson* or this case, apart from it arising in the prison context. *See also Kalu v. Spaulding*, No. 23-1103, ___ F.4th ___, 2024 WL 3884268, at *8 (3d Cir. Aug. 21, 2024) ("[T]he Supreme Court has never recognized *Farmer* as a *Bivens* case.").

medical care "differ markedly from a prisoner dying after an asthma attack where his asthma was not properly treated"); *Noe v. United States Gov't*, No. 23-1025, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023); *Nellson*, 2023 WL 3336689 at *4 (discussed *supra*); *Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *1 & n.1 (5th Cir. Sept. 8, 2023).

## B.    Special Factors Counsel Hesitation Here

Moving on to the second step, if a claim arises in a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the federal courts are at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (cleaned up). The Supreme Court has "not attempted to create an exhaustive list of factors that may provide a reason not to extend *Bivens*, but has explained that central to this analysis are separation-of-powers principles." *Hernandez*, 140 S. Ct. at 743 (cleaned up). "[I]t is a significant step under separation-of-powers principles for a court to . . . create and enforce a cause of action for damages against federal officials." *Ziglar*, 582 U.S. at 133. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 135 (quoting *Bush v. Lucas*, 462 U.S. 367, 380

(1983)). If "there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed," *Egbert*, 596 U.S. at 496, then a court must refrain from doing so.

This second-prong inquiry includes evaluating the availability of alternative means of relief. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). "Importantly, the relevant question is not whether a *Bivens* action would 'disrup[t]' a remedial scheme, or whether the court 'should provide for a wrong that would otherwise go unredressed[.]'" *Id.* (citations omitted). "Nor does it matter that 'existing remedies do not provide complete relief.'" *Id.* (quoting *Bush*, 462 U.S. at 388); *accord Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for *some* redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability."). A "court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be

augmented by the creation of a new judicial remedy.'" *Egbert*, 596 U.S. at 493 (quoting *Bush*, 462 U.S. at 388).

### 1. Interference in BOP's Systemic Management of Medical Care Counsels Against a *Bivens* Remedy

Before a court takes the disfavored and unusual step of extending *Bivens*, it must evaluate "policy considerations . . . at least as broad as the range . . . a legislature would consider." *Egbert*, 596 U.S. at 491 (noting such considerations "include economic and governmental concerns, administrative costs, and the impact on government operations systemwide.") (cleaned up). "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

Congress delegated the complex duties of managing day-to-day medical care in the federal prison setting to the Executive Branch. *See* 18 U.S.C. § 3621(i)(1) (charging BOP with ensuring "each prisoner . . . has access to necessary medical care, mental health care, and medicine"); *id.* § 3622(a)(3) (authorizing BOP to temporarily release a prisoner to obtain "medical treatment not otherwise available"). Inserting courts into disagreements about such care management—including those regarding implementation of BOP clinical guidance, timing of medical review and

testing, appointment procedures, and decisions regarding care for transferring inmates—risks disruptive intrusion into BOP's administration of its facilities and provision of care. And a court evaluating particular aspects of medical care provided to a particular inmate in a particular instance would lack the broader perspective to make holistic judgments regarding healthcare, staff management, security, and budgeting—all considerations that BOP officials must balance in managing its facilities and services.

BOP maintains custody over more than 158,000 federal inmates, who have a range of health concerns and issues. *See* Bureau of Prisons, *About Our Agency*, https://www.bop.gov/about/agency/ (last visited August 30, 2024). There are around 35,000 employees to manage the myriad of security, housing, programmatic, rehabilitative, healthcare, and administrative needs and issues that arise in the prison setting. *See id.* Three thousand of those 35,000 BOP employees work for the Health Services Division, meaning there are about 52 inmates (of varying ages, histories, and health profiles medical problems) for every Health Services staff member. *See* Bureau of Prisons, *About Our Agency: Health Services Division*, https://www.bop.gov/about/agency/org_hsd.jsp. BOP must

make healthcare management policy on both a system-wide and facility-by-facility basis, which involves considerations of the inmate population, standards of care, BOP care management protocols for varying conditions, and local availability of outside resources. *See, e.g.,* BOP Program Statement 6031.04 (June 3, 2014) (discussing care available at different BOP facilities); BOP, Clinical Guidance: Care Level Classification for Medical and Mental Health Conditions or Disabilities (May 2019);[11] and 18 U.S.C. § 3621(b) (discussing the health care elements of an inmate placement decision). It also requires consideration of BOP budgets, staffing, transportation, and security for inmates, staff, and the public at large.

Before authorizing a *Bivens* remedy for Muniz's claim (or those like it), the Supreme Court directs lower courts to consider the "systemwide consequences" of doing so. *Egbert*, 596 U.S. at 493 ("Even in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a

---

[11]     *See* https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited August 30, 2024).

special factor that forecloses relief."); *see Fisher*, 2024 WL 3820969, at *6 ("Fisher's claim 'seeks to impose liability on prison officials on a systemic level,' and this 'new category of prison litigation' would place 'a substantial burden . . . on government operations.'") (quoting *Bulger v. Hurwitz*, 62 F.4th 127, 141 (4th Cir. 2023)).  And lower courts must also consider "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 596 U.S. at 499 (cleaned up).

Muniz's claims implicate issues of systemwide policy and practice, which should counsel hesitation before creating a novel damages remedy. With respect to Muniz's claims regarding metformin and the medical passes, he seeks to hold Dr. Lopez De Lasalle financially responsible as an individual defendant for: (1) how BOP manages inmate healthcare following a facility transfer; and (2) the medical discretion afforded to Health Services physicians under CDC and BOP guidelines[12] for treating a chronic condition over an inmate's individual healthcare preferences. (Muniz's allegations about the November 2019 wound care have no

---

[12]     *See* footnote 3, *supra. See also, generally,* BOP, Clinical Guidance: Management of Diabetes (Mar. 2017).

apparent relevance to Dr. Lopez De Lasalle.) Again, a *Bivens* claim is not an allegation of negligence by the federal government in implementing healthcare policy, and further, this case is not like *Carlson* where the individual defendants' conduct was far outside the boundaries of reasonable professional practice and federal policy. Here, Muniz's constitutional claims would require general judicial supervision of several aspects of BOP's administration of medical care to inmates. The Supreme Court has directed that such supervision is the province of Congress, not the courts. *See Ziglar*, 582 U.S. at 140-41; *Kalu*, 2024 WL 3884268 at *15 ("Congress has directed 'control and management of Federal penal and correctional institutions . . . in the Attorney General, who shall promulgate rules for the government thereof.' 18 U.S.C. § 4001(b)(1)"). Thus, the Court can and should affirm by finding special factors counsel hesitation.

## 2. The Availability of Alternative Relief in this Case Also Counsels Hesitation

Upon determining that a *Bivens* claim arises in a new context, another key question a court must ask is "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and

freestanding remedy in damages." *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). As the Supreme Court explained in *Abbasi*, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 582 U.S. at 145; *cf. Egbert*, 596 U.S. at 497–98 (finding that the ability to submit a grievance through a process created by Congress or the Executive should not be second-guessed by the courts superimposing a *Bivens* remedy).

Moreover, that alternative remedy "need not provide an individual with ***complete*** relief in order to foreclose a damages remedy under *Bivens*." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020) (emphasis in original). And it need not afford an individual the rights to participation or appeal. *See Egbert*, 596 U.S. at 497–98. "The court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *See id.* at 1804 (cleaned up).

Here, Muniz could have sought relief through BOP's administrative remedy program following his July 2019 medical review with Dr. Lopez De Lasalle where she concluded that, as a pre-diabetic, he presently did

not need metformin or his prior medical passes. (As shown in the record below, however, Muniz only pursued administrative relief regarding his care in early 2020, after his infection. *See* SA23-42.) BOP's administrative remedy process provided Muniz with an opportunity for relief at the administrative level, which the Third Circuit clearly holds will preclude a new *Bivens* remedy. *See Fisher*, 2024 WL 3820969, at *7 ("[W]e join our sister courts and hold that the BOP's Administrative Remedy Program precludes a *Bivens* remedy."); *see also Mack*, 968 F.3d at 320-21; *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("Because *Bivens* is concerned solely with deterring the unconstitutional acts of individual officers, we find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.") (cleaned up); *Vega v. United States*, 881 F.3d 1146, 1154 & n.4 (9th Cir. 2018) (finding no *Bivens* remedy for inmate, in part, because BOP's Administrative Remedy Program "provide[d] an adequate, and more appropriate, remedy to vindicate [his] rights"). The District Court correctly concluded that the availability of BOP's administrative remedy program counseled hesitation here, precluding a new remedy. AA 17-19.

Muniz also had other alternative remedies. Foremost, he could have sought equitable or injunctive relief from a federal district court regarding his healthcare, for individual treatment decisions or for challenges to BOP's medical management decisions implicated in his treatment, particularly given that he allegedly "pleaded to Dr. [Lopez De Lasalle]" in July 2019 (AA 43) to keep his prior medical program in place even after the significant reduction in his A1C. *See, e.g.*, *Abbasi*, 582 U.S. at 144-45 (identifying injunctive relief as an alternative process); *Mack*, 968 F.3d at 321 (declining to extend *Bivens* to inmate's claims, in part, because alternative processes such as the BOP's administrative remedy process and injunctive relief in federal court could have redressed plaintiff's alleged harms). While the United States does not concede that any BOP medical staff erred, or that BOP policies and practices caused Muniz's injuries, he nonetheless had a judicial remedy available that could have obviated the injuries for which he now seeks a constitutional damages remedy.

To the extent Muniz seeks to challenge alleged dysfunction in BOP's broader medical care scheme, alleged wrongdoing by Health Services staff, or inaccuracies in the reporting of medical records, he had

(and has) recourse to complain to the Department of Justice's Office of Inspector General ("OIG"), *see* 28 C.F.R. §§ 0.29-0.29f, or BOP's Office of Internal Affairs ("OIA"), *see* BOP Program Statement 1210.24.[13] These administrative bodies may investigate misconduct by BOP personnel. *See, e.g., Pettibone v. Russell*, 59 F.4th 449, 456–57 (9th Cir. 2023) ("Aggrieved parties can report any alleged misconduct to the Inspector General"); *Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023) (noting that OIG may "investigate" misconduct); *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) ("the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct") (cleaned up); *Holton*, 2024 WL 1919238 at *10 (agreeing that "internal BOP discipline [and] oversight by the Department of Justice's Office of Inspector General" constituted alternative remedies available to an inmate complaining about medical care and other alleged wrongdoing).

---

[13] *See* https://www.bop.gov/policy/progstat/1210_024.pdf (last visited August 30, 2024).

Thus, the existence of alternative processes—which Muniz could have pursued both prior to his injury to seek to prevent it and after to investigate alleged wrongs—preclude the creation of a *Bivens* remedy. The District Court correctly found that such alternative relief counseled hesitation and thus barred a new *Bivens* remedy.

## II.   DR. LOPEZ DELASALLE IS ENTITLED TO QUALIFIED IMMUNITY

In the alternative, Dr. Lopez De Lasalle is entitled to qualified immunity with respect to Muniz's Eighth Amendment deliberate indifference claim. It is appropriate to examine this doctrine at this stage because "the sufficiency of a plaintiff's allegations in a *Bivens* action is 'inextricably intertwined with' and 'directly implicated by' the defense of qualified immunity." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009)). This Court "may affirm the District Court's judgment on any basis supported by the record." *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011).

Qualified immunity shields federal employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is "a

two-step sequence for resolving government officials' qualified immunity claims," and the Court may address the steps in either order. *Pearson v. Callahan*, 555 U.S. 223, 232, 237-42 (2009). It may decide, first, "whether the facts that [a plaintiff] has alleged . . . make out a violation of a constitutional right" by the defendant, and second, if they do, the Court "must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citations omitted). *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (examining a Fed. R. Civ. P. 12(b)(6) motion).

## A. Muniz Failed to Plead a Plausible Eighth Amendment Claim for Deliberate Indifference

Dr. Lopez De Lasalle is entitled to qualified immunity, and the Court should affirm, because Muniz failed to plead a plausible claim for Eighth Amendment violations here. The pleaded facts here raise, at most, allegations of professional negligence, not deliberate indifference.

To survive a plausibility challenge, the operative pleading must present factual allegations that are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While courts accept the allegations in the complaint and reasonable inferences drawn from

them as true, and view them in the light most favorable to the plaintiff, for purposes of a Fed. R. Civ. P. 12(b)(6) motion, it "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

"[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-04 (1976)). To sustain such a claim, "a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Id.* (cleaned up). Regarding the subjective component, the plaintiff must demonstrate that the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues

of constitutional import. . . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *Szemple v. Univ. of Med. & Dentistry of N.J.*, 451 F. App'x 187, 191 (3d Cir. 2011). "'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *U.S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 575 (3d Cir. 1979) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)); *see Pearson*, 850 F.3d at 538 ("[T]he deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients, we must disavow any attempt to second-guess the propriety or adequacy of their particular course of treatment so long as it remains a question of sound professional judgment.") (cleaned up); *Smith v. Bolava*, 632 F. App'x 683, 686 (3d Cir. 2015).

Here, Muniz's allegations are insufficient to establish a plausible Eighth Amendment violation by Dr. Lopez De Lasalle. Muniz alleges that

the doctor discontinued his metformin medication for his diabetes and did not renew medical passes authorizing use of soft shoes and bottom bunk placement. However, the record shows that Dr. Lopez De Lasalle made these decisions after conducting a full intake examination on Muniz following his transfer, including consideration of very recent A1C results that placed him in a "pre-diabetic," not diabetic, range for blood sugar. As discussed above, such decisions constituted an exercise of medical discretion permitted under CDC and BOP medical guidance. *See also Ginyard v. Del-Prete*, Civ. No. 20-1947, 2022 WL 17492412, at *6 (W.D. Pa. Sept. 21, 2022), *R&R adopted*, Civ. No. 20-1947, 2022 WL 16832676 (W.D. Pa. Nov. 9, 2022), *aff'd*, No. 22-3213, 2023 WL 3967906 (3d Cir. June 13, 2023) (denying Eighth Amendment claim of inmate who claimed that he had been refused medical care for diabetes by failing to order blood tests, as staff reviewed his tests from within the past year, which were within normal limits); *Flowers v. Francoise*, No. 22-1077, 2022 WL 2447899, at *2 (3d Cir. July 6, 2022). Muniz alleges that he "pleaded" for her to maintain his prior medical program, but there was no objective medical evidence requiring those interventions. Further, Dr. Lopez De Lasalle properly ordered further testing in four months to

permit ongoing evaluation. Muniz points to no objective medical data or evidence between that July 2019 medical encounter and the advent of his toe sore in November 2019 that Dr. Lopez De Lasalle reviewed and ignored. So Muniz has not properly pleaded any objective or subjective knowledge on the part of Dr. Lopez De Lasalle of any substantial health risk to him from the doctor's treatment decisions.

Muniz's various allegations amount to, at most, medical negligence, which is insufficient to state a claim for an Eighth Amendment violation. Although Plaintiff disagrees with the course of treatment, he has not alleged or otherwise shown that Dr. Lopez De Lasalle knowingly and deliberately acted in a way likely to cause him serious medical harm. *See Farmer*, 511 U.S. at 837; *see also Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497, at *2 (3d Cir. Nov. 7, 2022) ("Alsop has not shown that when [doctor] elected to pursue the conservative treatment, she had reasons to believe that Alsop faced substantial harm without the vascular surgery"); *Hodge v. United States Dep't of Justice*, 372 F. App'x 264, 268 (3d Cir.2010) ("disagreements . . . among physicians, concerning the course of medical treatment . . . do not support a claim for a violation of the Eighth Amendment."); *Ham v. Greer*, 269 F. App'x 149, 151 (3d Cir.

2008) ("Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred. This simply does not rise to the level of a violation of a constitutionally protected right.").

Muniz alleges that Dr. Lopez De Lasalle referenced the expense of the medication during his visit, but he does not allege that Dr. Lopez De Lasalle denied him treatment for non-medical reasons. Instead, he alleges that after her review of his records (including the recent A1C result showing he was out of the diabetic range) and his intake examination, Dr. Lopez de Lasalle told Muniz that she would not make "BOP pay for something Plaintiff did not need." Thus, he does not allege Dr. Lopez de Lasalle told him that the cost was the reason for her treatment decision, but instead that it would be unreasonable to expend BOP resources on a medically unnecessary course of treatment. Plaintiff has provided "no basis for second-guessing [the doctor's] decisions, let alone concluding that [she] violated his Eighth Amendment rights." *Alsop*, 2022 WL 16734497, at *2 (citing *Walker*, 599 F.2d at 575 n.2).

Because Muniz failed to plead a plausible claim of deliberate indifference, the Court should affirm the decision below on grounds of qualified immunity.

## B. Muniz Alleges No Violation of a Clearly Established Right

Regarding the second qualified immunity prong, a government official "violates clearly established law" if:

> . . . at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Al-Kidd*, 563 U.S. at 741 (quotation marks, brackets, and citations omitted). "This requires a high degree of specificity." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quotation marks omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Al-Kidd*, 563 U.S. at 742). If "a reasonable officer might not have known for certain" that the particular conduct ascribed to him "was unlawful," then he "is immune from liability." *Abbasi*, 582 U.S. at 152.

In deciding whether the constitutional right at issue was "clearly established," the Court "must first frame the precise contours of that right," being mindful that "courts are not to define clearly established law at a high level of generality." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015). Framing an issue too broadly "convert[s] the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639. Therefore, the qualified immunity analysis is "fact specific," *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and "must be undertaken in light of the specific contexts of that case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

*Spady* is instructive on defining the contours of the right at issue. In *Spady*, the family of a student who died from a rare condition called "dry drowning" sued the school district under the state-created-danger theory, arguing that the school violated "the student's constitutional right to be free from school officials' deliberate indifference to" risks of serious bodily injury. *Spady*, 800 F.3d at 637. The Third Circuit held that the family's framing of the right was too broad, and the issue should be framed as whether "a student who experiences a brief submersion under

water, exits the pool and complains of chest pain, is ordered to return to the pool after a several-minute respite, then stays in the shallow end of the pool for the remainder of the class" has been denied the constitutional right to "affirmative intervention . . . to minimize the risk of secondary or dry drowning." *Spady*, 800 F.3d at 638-39. The Third Circuit, after defining the issue in a narrow manner that considered the specific facts, held that the right was not clearly established and accepted the defendants' assertion of qualified immunity. *Id.* at 641.

Even if this Court concludes that Muniz pleaded a plausible deliberate indifference claim under the Eighth Amendment (which it should not), the Court should nevertheless hold that the circumstances are in-no-way "beyond debate," *Al-Kidd*, 563 U.S. at 741, and thus, Dr. Lopez De Lasalle is entitled to qualified immunity. The specific issue here is whether a prison physician violates the Eighth Amendment by changing an inmate's treatment plan for diabetes where his A1C blood test results from just weeks prior show him presently in the pre-diabetic range and where the physician orders further testing in four months to check those A1C levels again. Or put another way, the question is whether Muniz had an established right to maintain a medical treatment

program for diabetes even after his A1C blood test results showed him in remission from the condition and even where his physician scheduled follow-up testing to determine if the remission continued.

Muniz did not address qualified immunity in his opening brief—apart from acknowledging that the doctrine can protect individual defendants from constitutional claims. Opening Br. at 8 (quoting *Carlson*, 446 U.S. at 19). In the briefing before the District Court, Muniz discussed and argued qualified immunity in the context of prison medicine generally, *see* Dist. Ct. ECF No. 29 at 18-23, but did not present a Supreme Court decision or unequivocal line of cases creating a clearly established right to maintain his diabetes treatment even after test results showed him as pre-diabetic only and where the treating physician planned to continue monitoring him through appropriate lab tests.

Because there was no clearly established right that meets the specific contours of Muniz's claim, the Court can affirm on grounds of qualified immunity.

## III. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S REHABILITATION ACT CLAIM

In screening Muniz's complaint pursuant to 28 U.S.C. §§ 1915, 1915A, the District Court dismissed his Rehabilitation Act claim. AA 138-146. The District Court examined the pleadings and found that they contained no allegations of Muniz's exclusion from any service, program, or activity on grounds of disability. The District Court held that, under established Third Circuit law, Muniz could not proceed on a discrimination claim that "he was denied medical treatment for his disabilities[.]" AA 141-42. The Court should affirm.

The Rehabilitation Act was "the first federal statute to provide broad prohibitions against discrimination on the basis of disability," and it applies "to programs and activities receiving federal financial assistance." *Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997). Claims under the Rehabilitation Act and the broader-reaching Americans With Disabilities Act ("ADA") are generally reviewed in the same manner and subject to the same standards. *Id.* at 170 ("all the leading cases take up the statutes together"). To state a claim under the Rehabilitation Act, "plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded

from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). To proceed on a Rehabilitation Act claim, "the disability must be the sole cause of the discriminatory action," and to seek compensatory damages, "a plaintiff must also show intentional discrimination under a deliberate indifference standard." *Id.* at 225-26. However, pertinent to Muniz's claim against the BOP or its employees, Congress has not waived sovereign immunity under the Rehabilitation Act for money damage claims with respect to the United States or its executive agencies. *Lane v. Pena*, 518 U.S. 187, 193 (1996); *Kowalski v. Postmaster Gen. of U.S.*, 811 F. App'x 733, 737 (3d Cir. 2020) ("Section 504 does not waive sovereign immunity for damages claims against federal agencies"); *Chamberlain v. Chandler*, 344 F. App'x 911, 913 (5th Cir. 2009) ("claims for monetary damages for alleged discrimination under any program or activity against the Bureau of Prisons or its director are shielded by sovereign immunity").

As the District Court correctly held in its screening opinion, medical treatment decisions for inmates are "not encompassed by the

[Rehabilitation Act's] prohibitions." *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("a lawsuit under the Rehab Act or the [ADA] cannot be based on medical treatment decisions"); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143–44 (10th Cir. 2005); *Owens v. Rutgers Univ. Behav. Health Care*, Civ. No. 15-4730-JBS, 2016 WL 7424482 at *5 (D.N.J. Dec. 23, 2016) (holding that "failure to provide muscle relaxant and stronger pain medication . . . is a medical malpractice or Eighth Amendment claim"). These courts hold that medical care decisions do not constitute "discrimination" based on disability. *See Talley v. Clark*, No. 19-3078, 2023 WL 118470 at *1 (3d Cir. Jan. 6, 2023) (concluding that an inmate "did not claim that a disability was the basis for the denial of care"); *Iseley*, 200 F. App'x at 142 ("Iseley does not claim he was excluded from any program on the basis of his disability."); *Frazier v. Bond*, Civ. No. 18-16774-JBS, 2019 WL 20043700, at *3 (D.N.J. May 6, 2019); *McClintic v. Pa. Dep't of Corr.*, Civ. No. 12-6642, 2013 WL 5988956, at *11 (E.D. Pa. Nov. 12, 2013) ("McClintic nevertheless has failed to identify any discrimination he has suffered, or program, service, activity or benefit from which he has been excluded or which he has been denied 'because

of' his alleged disability."); *Rosario v. Wash. Mem. Hosp.*, Civ. No. 12-1799, 2013 WL 2158584 *5 (W.D. Pa. May 17, 2013).

Muniz's pleading, including his allegations regarding Rehabilitation Act violations, lodges this matter solely in the sphere of medical care. He cites the statute as a basis for jurisdiction in his form complaint, AA 32, and as grounds for relief on his introductory page of his typed complaint, AA 38. Then, in summarizing his Rehabilitation Act claim, Muniz states as follows:

> Plaintiff has a life long disability of diabetes, and he qualifies to have medication for his disability; but the defendants who were BOP employees in FCI Fairton, New Jersey, individually and collectively denied him the benefit solely because of his disability because they could; and the FBOP is a government agency which receives federal financial assistance.

AA 40 (citing 29 U.S.C. § 794(a)). Most importantly, Plaintiff's factual allegations regarding the soft shoe pass and upper bunk pass all cast them as issues of medical treatment tied to his A1C blood level. *See* AA 39-43. Consistent with that characterization, the medical records attached to Plaintiff's Complaint show that Dr. Lopez De Lasalle changed his prior treatment program for diabetes in July 2019 when his blood test results showed him in remission. AA 93. That prior program involved a

metformin prescription and the two medical passes. FCI Fairton's Health Services then reinstated all three medical treatments when Muniz's A1C later rose and placed him back in a diabetic range. AA 126.

What's more, Muniz does not allege that Dr. Lopez De Lasalle's decision to rescind his medical passes when his A1C level dropped out of the diabetic range prevented him from participating in any services, programs, or activities. Instead, Muniz pleads that he wanted the medical passes as a *preventative* measure regarding any return of diabetes: "Plaintiff requested Dr. Lopez to renew his Soft Shoe pass and Bottom Bunk pass to protect him from diabetic ulcers." AA 43. As discussed above, when Muniz's diabetes recurred in November 2019, Health Services reinstated a course of treatment that included metformin, a bottom bunk pass, and a soft shoe pass. AA 126.

Muniz does not allege that, between Dr. Lopez De Lasalle's July 2019 medical decisions and the return of his diabetes in November 2019, he was unable to participate in any services, programs, or activities at FCI Fairton. Nor does he attach records showing that he complained about activity limitations that the bottom bunk pass and soft shoe pass would resolve. Indeed, he pleads that, in early November 2019, he sought

medical care from Health Services for medical conditions that emerged, and he attaches records showing that BOP provided such care. AA 95-105. This distinguishes this case from cases cited by Muniz in his Opening Brief where an inmate had a diagnosed medical condition, and the denial or removal of care interventions by non-medical corrections staff resulted in exclusion from common, daily activities. *See Durham*, 82 F.4th at 222 (describing diagnosis of lumbar stenosis that required the use of a cane and handicapped-accessible showers); *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287-88 (3d Cir. 2019) (describing a diagnosis of myasthenia gravis that required access to handicapped-accessible showers).

Muniz cites several cases involving orthopedic or spinal conditions that do not improve and that require accommodations to reduce pain and ensure participation in regular activities of daily life. *See id.*; *Brown v. Meisner*, 81 F.4th 706 (7th Cir. 2023) (inmate with knee injury denied physical accommodations by institution staff); *Morris v. California*, No. 21-16059, 2022 WL 2901730, at *1 (9th Cir. 2022) (inmate with "right knee and left foot" injuries requested a wheelchair and placement in a facility with ramps); *Munoz v. Cal. Dep't of Corr. & Rehab.*, 842 F. App'x

59, 62 (9th Cir. 2021) (inmate with knee injuries alerted DOC to his need for physical accommodations); *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (inmate with paralyzing condition denied wheelchair and other accommodations for his physical limitations). None of these cases involved a chronic condition diagnosed by recent lab results as in remission; nor do these cases involve the medical judgment of a physician regarding the necessity of medical interventions. Indeed, these opinions cited by Muniz reassert that medical decisions "cannot form the basis of a claim under the" Rehabilitation Act. *Dinkins*, 743 F.3d at 634; *see Brown*, 81 F.4th at 709 (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *Morris*, 2022 WL 2901730 at *1; *Munoz*, 842 F. App'x at 62 (quoting *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010)).

Further, Muniz cannot clear the strict causation requirement of the Rehabilitation Act or the requirement to show deliberate indifference—much less establish any jurisdiction to pursue money damages under this law. *Durham*, 82 F.4th at 225-26; *Lane*, 518 U.S. at 193; *Kowalski*, 811 F. App'x at 737; *Chamberlain*, 344 F. App'x at 913. Regarding causation, the records and Muniz's pleading both show that Dr. Lopez De Lasalle discontinued the prior course of treatment (metformin and the two

medical passes) because Muniz's recent A1C results placed him in the pre-diabetic range. Thus, even assuming *arguendo* that Muniz could establish that he experienced some exclusion from services, activities, or programming due to the removal of the lower bunk and soft shoe passes, he cannot show that discrimination was the sole reason. At least in part (if not in full), the removal of these passes arose from medical decision making based on objective test results and supported by CDC and BOP guidance on diabetes. *See Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) ("In the complete absence of evidence that Tardif's epilepsy caused a deprivation of medical services, the fact that her disability was her motivation for seeking out such services does not suddenly transform her allegations regarding the inadequate medical treatment into a 'failure to accommodate' claim."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("Even if there were (as we doubt) *some* domain of applicability of the Act to prisoners, the Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); *Talley*, 2023 WL 118470 at *1.

Muniz also cannot demonstrate deliberate indifference for all the same reasons discussed in Part II(A), *supra*. Finally and most fatally,

under *Lane v. Pena* and principles of sovereign immunity, there are no money damages available for Muniz's Rehabilitation Act claim against federal officials because there is no jurisdiction for such a claim.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the Court affirm the dismissals of Muniz's claims in this action by the District Court.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

Dated: September 6, 2024    By:    */s/ John T. Stinson*
JOHN T. STINSON
Assistant U.S. Attorneys
*Attorneys for the United States*
*and Dr. Lopez De Lasalle*

## <u>CERTIFICATION OF COMPLIANCE</u>

I, John T. Stinson, Assistant United States Attorney for District of New Jersey, hereby certify that:

1. This brief complies with the length limitations of Federal Rule of Appellate Procedure 32(a)(7) because:

   __ this brief does not exceed 30 pages in length;

   **X** this brief contains no more than 11,949 words and, therefore, does not exceed the 13,000-word limit.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

   **X** it is in a proportionally spaced typeface (Century Schoolbook) that is at least 14-point;

   __ it is in a monospaced typeface and contains no more than 1,300 lines of text.

3. The text of the electronic brief in PDF form is identical to the text of the paper copies of the brief. The electronic brief has been scanned upon e-mail transmission by the continuously updated virus detection program Trend Micro "Office Scan" for Windows, and no virus was detected.

By:   */s/ John T. Stinson*
JOHN T. STINSON
Assistant United States Attorney

Dated:   September 6, 2024
Camden, New Jersey

## CERTIFICATION OF FILING AND SERVICE

I, John T. Stinson, Assistant United States Attorney for District of New Jersey, hereby certify that on September 6, 2024, I caused the Brief of Defendants-Appellees United States of America and Dr. Lopez De Lasalle:

1. To be filed with the Clerk of the United States Court of Appeals for the Third Circuit by (a) electronic filing in PDF form using the Circuit's electronic filing system, and (b) paper filing one original and six copies of the brief using Federal Express for overnight delivery to the Clerk; and

2. To be served on all counsel of record by the Circuit's electronic filing system and also by emailing a copy to the email address listed below:

Samuel Weiss, Esq.
Rights Behind Bars
sam@rightsbehindbars.org

By: */s/ John T. Stinson*
JOHN T. STINSON
Assistant United States Attorney

Dated: September 6, 2024
Camden, New Jersey